UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SYED ALI     Plaintiff

v.     Civil Action No. 3:17-cv-00638-RGJ

UNIVERSITY OF LOUISVILLE, ET AL.     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Syed Ali brings this action against Defendants University of Louisville (the "University"), Dr. Marcia Hern, Dr. Angela Calloway, and Katherine Weckman alleging violations of Title IX of the Educational Amendments Act of 1972 (20 U.S.C. § 1681 *et seq.*), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. § 6101 *et seq.*), the Fifth and Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983), breach of contract, defamation, and intentional infliction of emotional distress ("IIED"). [DE 1-2, Compl.]. Defendants now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). [DE 7, Univ. First MTD; DE 10, Weck. First MTD; DE 34, Univ. Second MTD; DE 36, Weck. Second MTD]. The matter is fully briefed and ripe for judgment. [*See* DE 38, Resp. Univ. MTD; DE 39, Resp. Weck. MTD; DE 40, Weck. Reply].

Having considered the parties' filings and the applicable law, the Court **GRANTS** the University's, Dr. Hern's, and Dr. Calloway's Second Motion to Dismiss [DE 34] and **DENIES AS MOOT** the University's, Dr. Hern's, and Dr. Calloway's First Motion to Dismiss [DE 7]. The Court declines to exercise supplemental jurisdiction on Ali's remaining state-law claims against Weckman. Weckman's First and Second Motions to Dismiss [DE 7; DE 36] are therefore **DENIED AS MOOT**, and the case is **REMANDED** to state court.

## BACKGROUND

The following facts are set out in the Complaint and accepted as true for purposes of Defendants' Motions. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012).

Beginning in 2015, Ali was a student at the University of Louisville School of Nursing. [DE 32, Am. Compl. at ¶ 11]. On September 19, 2016, Ali was arrested for two counts of sexual misconduct with a minor under the age of 12 and one count of distribution of obscene material to a minor under the age of 12. *Id.* at ¶ 12. Following Ali's arrest, Dr. Hern, Dean of the School of Nursing, placed Ali on interim suspension for potential violations of the University Code of Student Conduct. *Id.* at ¶ 17; [DE 9-1, Interim Suspension Letter]. The University also claimed that Ali failed to complete a background check required for admission. [DE 7-1, Univ.'s Motion to Dismiss at 40]. Ali contends that he did not violate the Code of Student Conduct and complied with all admissions requirements, including the background check. [DE 32 at ¶ 11]. Ali then completed a background check at the University's request but voluntarily remained on suspension. [DE 7 at 40; DE 9-1; DE 32 at ¶ 21].

On December 1, 2016, Ali alleged that Dr. Calloway, a clinical professor at the University, violated his rights under the Family Educational Rights and Privacy Act ("FERPA") by discussing his case in her classes. [DE 32 at ¶ 23]. The University held a hearing on Ali's grievance and determined that Dr. Calloway had not violated Ali's rights. *Id.* at ¶ 25. In May 2017, Ali complained to the University that another student, Katherine Weckman, violated Ali's rights under Title IX during the discussions in Dr. Calloway's classes by claiming that she "knew" Ali was a "pedophile." *Id.* at ¶ 26. The University determined that Weckman's conduct did not implicate Title IX and informed Ali that it would not hold a hearing on his complaint. *Id.* at ¶ 27.

Ali filed this civil action under the pseudonym "John Doe" in Jefferson County Circuit Court on September 25, 2017. *Id.* The state court declined Ali's request for a protective order to allow him to proceed as "John Doe." [DE 1-2; DE 25-1 at 272]. On October 17, 2017, Defendants removed the action to this Court. [DE 1, Not. Removal]. Defendants moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). [DE 7; DE 10]. Ali then moved for leave to proceed as "John Doe" and to seal or remove his name from all documents. [DN 13]. The Court denied Ali's request and ordered Ali to file an amended complaint using his full name [DE 28; DE 29], which Ali did on July 18, 2018 [DE 32]. Defendants then filed updated Motions to Dismiss. [DE 34; DE 36]. Timely responses and replies were filed. [*See* DE 38; DE 39; DE 40].

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## DISCUSSION

### A. Procedural Due Process

First, Ali claims that the University violated his due-process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution by failing to follow its own published policies and procedures when responding to the allegations against Ali. [DE 32 at ¶¶ 34–35]. Ali seeks both damages related to his suspension under 42 U.S.C. § 1983 and reinstatement into the Nursing Program. *Id.* at ¶¶ 38–39; *see Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (holding that a plaintiff who seeks to recover damages for violation of his constitutional rights must bring his action under 42 U.S.C. § 1983).

In response, the University asserts that the Eleventh Amendment protects it from suit. The Eleventh Amendment stipulates that a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Eleventh

Amendment immunity can only be waived if (1) the state consents to suit; (2) the *Ex parte Young*, 209 U.S. 123 (1908), exception applies; or (3) Congress has abrogated a state's Eleventh Amendment immunity. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000) (citing *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999)).

"The University of Louisville is a state agency cloaked with Eleventh Amendment immunity." *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 960 (6th Cir. 1986) (citing *Martin v. Univ. of Louisville*, 541 F.2d 1171, 1174 (6th Cir. 1976)); *see also Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) (noting that public universities in Kentucky and their directors are state agencies and officials for Eleventh Amendment purposes). It is well settled that Kentucky has not consented to waive its Eleventh Amendment immunity. *Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991)). Further, the *Ex parte Young* exception only allows suits seeking prospective injunctive relief against college administrators, professors, and other state officials acting in their official and individual capacities. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005). It does not affect the Eleventh Amendment's prohibition on suing state entities themselves. *Id.* Finally, the Sixth Circuit has found that Congress did not intend for Section 1983 to override states' immunity under the Eleventh Amendment. *See Whittington*, 928 F.2d at 193. Accordingly, the Eleventh Amendment prohibits Ali from seeking damages under Section 1983 or asserting a due-process claim against the University, and Ali's due-process claim against the University is dismissed.

However, it is unclear from Ali's Complaint whether he asserts his due-process claim only against the University itself—which, as discussed above, the Eleventh Amendment prohibits—or against both the University and Dr. Hern, who suspended Ali in her role as dean of the School of Nursing. [DE 32 at ¶¶ 15, 34–35]. Because the Court must make all reasonable inferences in Ali's

favor when considering Defendants' Motions to Dismiss, the Court will construe Ali's Complaint as asserting his due-process claim against both the University and Dr. Hern in her official capacity as dean. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434. And while the Eleventh Amendment prohibits Ali from proceeding against the University with his due-process claim, it does not bar his claim against Dr. Hern as it relates to Ali's reinstatement into the Nursing Program. *Flaim*, 418 F.3d at 637 n. 4 (noting that the Eleventh Amendment did not prohibit Flaim's claim against state officials in their official capacities for prospective injunctive relief requiring his readmittance to medical school).

A plaintiff claiming violation of his procedural due-process rights must allege facially plausible facts showing that (1) he had a fundamental liberty or property interest (2) that was deprived without sufficient notice or opportunity to be heard. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572–73 (1972). Ali's Complaint cites four separate instances where he was allegedly denied due process: (1) Ali's grievance hearing relating to the complaint that he filed against Dr. Calloway; (2) the University's decision not to hold a hearing on Ali's Title IX complaint against Weckman; (3) Dr. Hern's letter to Ali stating that Ali needed to complete a criminal background check; and (4) Ali's interim suspension following his criminal charges for sexual misconduct with a minor. [DE 32 at ¶ 34].

Of these four instances, Dr. Hern was involved only in the decision to suspend Ali from the Nursing Program.[1] Courts have consistently held that higher-education disciplinary decisions

---

[1] Although Dr. Hern's letter regarding the background check involves actions by Dr. Hern, Ali has not pleaded facts to indicate that Dr. Hern's letter amounts to denial of due process. Indeed, the background check appears wholly unrelated to the matter at issue. While Ali suggests that the background check was put forward as a justification for Ali's suspension [DE 32 at ¶¶ 15–16], the Interim Suspension Letter makes no reference to the background check and instead alleges that Ali violated various enumerated provisions of the Code of Student Conduct [DE 9-1]. Further, Ali completed the required criminal background check but remains suspended. [DE 32 at ¶ 21]. Thus, Ali's completion of the background check had no bearing on the outcome of his interim suspension and is irrelevant to his due-process claims.

implicate due process. *See, e.g.*, *Goss*, 419 U.S. at 575 (liberty and property interest implicated in high-school suspension); *Board of Regents*, 408 U.S. at 564; *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) ("Suspension clearly implicates a protected property interest, and allegations of sexual assault may impugn a student's reputation and integrity, thus implicating a protected liberty interest."); *Flaim*, 418 F.3d 629, 634 (6th Cir. 2005); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988) (a student's interest "in pursuing an education is included within the fourteenth amendment's protection of liberty and property").

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)). "Due process . . . is not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation." *Gorman*, 837 F.2d at 12; *see also Flaim*, 418 F.3d at 634. "At a minimum, a student facing suspension is entitled to the opportunity to be heard at a meaningful time and in a meaningful manner." *Univ. of Cincinnati*, 872 F.3d at 399 (internal citations and quotation marks omitted). And "[w]hile the exact outlines of process may vary, universities must 'at least' provide notice of the charges, an explanation of the evidence against the student, and an opportunity to present his side of the story before an unbiased decision maker." *Id.* (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 565–66 (6th Cir. 2011)). A student's opportunity to share his version of events must occur at "some kind of hearing," *Goss*, 419 U.S. at 579, even though that hearing need not "take on ... [the] formalities" of a criminal

trial, *Flaim*, 418 F.3d at 635. Indeed, the Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews*, 424 U.S. at 333 (collecting cases).

To support his due-process claim, Ali asserts that the University has "repeatedly" denied his request for a hearing regarding his suspension. [DE 32 at ¶¶ 19–21; DE 38-1 at 363–64]. But this is not supported by the pleadings. On September 20, 2016, the University noted in Ali's Interim Suspension Letter that "[a]ny student who has had interim action taken against him/her will be afforded an Administrative Conduct Meeting or a Conduct Hearing, as soon as it is practical." [DE 9-1]. The Letter also informed Ali that "[u]pon receipt of this letter, you must contact the Dean of Students . . . to schedule a meeting time to review hearing procedures and your rights and responsibilities under the Code of Student Conduct." *Id.* But rather than schedule the meeting, Ali responded that he "believe[d] [he] should remain on suspension for the remainder of [his] legal case." [DE 9-2, Ali Letter]. Ali thus received "notice of the charges against" him, "an explanation of the evidence against" him, and "an opportunity to present his side of the story before an unbiased decision maker." *Univ. of Cincinnati*, 872 F.3d at 399. Ali's decision to postpone the hearing and remain on suspension until after his legal case concluded, and the University's decision to honor that request, in no way violates due process. Accordingly, even taking all factual allegations in the Complaint as true and making all reasonable inferences in Ali's favor, Ali fails to state a claim for due process. His claim is therefore dismissed.[2]

---

[2] Further, Ali claims that the University violated the Kentucky Constitution when it suspended him from the Nursing Program. [DE 34 at ¶ 34]. Ali also cites the Kentucky Constitution to support his state-law discrimination and breach-of-contract claims. *Id.* at ¶¶ 20, 32. Ali does not cite any specific provisions of the Kentucky Constitution that he believes were violated. However, the Supreme Court of Kentucky has explicitly rejected the notion that violations of the Kentucky Constitution give rise to a claim for damages. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 533–34 (Ky. 2011). Thus, Ali's claims under the Kentucky Constitution are dismissed to the extent they seek monetary damages.

## B. Title IX: Hostile Environment and Discrimination

Next, Ali claims that he was subjected to a hostile environment under Title IX of the Educational Amendments Act of 1972 when the University "fail[ed] to protect his privacy, permit[ted] defamatory comments . . . which amounted to school-sanctioned harassment, to stand, by suspending him without due process, by failing to follow its own procedures[.]" [DE 32 at ¶ 36]. Ali also brings a Title IX claim based on discrimination, asserting that "the ratio of males to females is extremely low" at the School of Nursing, and thus Ali is a member of a protected class. *Id.* at ¶ 31. Congress has abrogated the States' Eleventh Amendment immunity for purposes of Title IX. *See Lane v. Pena*, 518 U.S. 187, 198 (1996).

To proceed on a Title IX claim against an educational institution, a plaintiff must establish a prima facie case by showing that: (1) he was subjected to *quid pro quo* sexual harassment or a sexually hostile environment; (2) he provided actual notice of the situation to an "appropriate person," who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination; and (3) the institution's response to the harassment amounted to "deliberate indifference." *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001). Further, a plaintiff must produce evidence that his educational experience was "'permeated with discriminatory intimidation, ridicule and insult that [was] sufficiently severe or pervasive to alter the conditions' of [his] education and create a sexually hostile environment." *Johnson v. Galen Health Institutes, Inc.*, 267 F. Supp. 2d 679, 685 (W.D. Ky. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The behavior must be based on sex, rather than personal animus or other reasons. *Id.* (citing *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002)).

In this case, Ali fails to establish a prima facie case of a hostile environment or discrimination under Title IX. Specifically, Ali's Complaint fails to put forward any facts to

9

suggest that the University's conduct was connected to his sex. Ali does not allege that either Dr. Calloway's discussion of Ali's case in her classes or Weckman's statement that she "knew that [Ali] was a pedophile" was in any way related to Ali's sex. Nor does Ali put forth any facts to suggest that the University's decision not to follow the Code of Student Conduct was related to his sex. Instead, without discussing sex at all, Ali states that the University's failure to protect his privacy and failure discipline its employees and Weckman "amounted to school-sanctioned harassment." [DE 32 at ¶ 36]. Ali thus fails to produce evidence that the allegedly adverse actions were based on sex rather than personal animus or some other reason.

But even construing Ali's Complaint as asserting that these actions occurred because of his sex, the actions do not constitute a hostile environment or discrimination under Title IX as a matter of law. Indeed, courts have consistently dismissed claims involving comparably hostile conduct. *See, e.g.*, *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) (affirming the district court's grant of summary judgment on plaintiff's hostile-environment claim because the plaintiff's allegations of gender bias in Miami University's sexual-assault disciplinary process failed to show that the plaintiff's experience was "permeated with discriminatory intimidation, ridicule, and insult"); *Doe v. Univ. of Dayton*, No. 3:17-CV-134, 2018 WL 1393894, at *8 (S.D. Ohio Mar. 20, 2018) (dismissing the plaintiff's hostile-environment claim because the plaintiff did not allege facts to show that his experience was permeated with discrimination); *Klemencic v. Ohio State Univ.*, 10 F. Supp. 2d 911 (S.D. Ohio 1998), *aff'd*, 263 F.3d 504 (6th Cir. 2001) (finding that a coach did not create a hostile environment by asking the student to go out with him and sending her a sexually suggestive magazine article because the acts were not severe or pervasive). Thus, even taking all factual allegations in the Complaint as true and making all reasonable inferences in Ali's favor, Ali fails to state a claim under Title IX. Those claims are therefore dismissed.

## C. Title VI: Discrimination

Ali also brings a claim against the University for discrimination under Title VI of the Civil Rights Act of 1964, asserting that he was subject to adverse actions because of his Iranian heritage. [DE 32 at ¶ 32]. Congress has abrogated the States' Eleventh Amendment immunity for purposes of Title VI. *See Lane*, 518 U.S. at 198.

Title VI prohibits discrimination "on the ground of race, color, or national origin" in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A Title VI claim requires the plaintiff to allege intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001). The plaintiff must present either direct or indirect evidence of racial discrimination. *Paasewe v. Ohio Arts Council*, 74 F. App'x 505, 507 (6th Cir. 2003). Direct evidence generally requires unmistakable assertions that the plaintiff was treated adversely because of his race. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

Where a plaintiff seeks to prove discrimination through indirect evidence, courts apply the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Paasewe*, 74 F. App'x at 508. To establish a prima facie case, the plaintiff must show: (1) that he is a member of a protected class; (2) that he met the defendant's legitimate expectations; (3) that he suffered an adverse decision; and (4) that similarly situated, non-protected individuals were treated more favorably. *Id.* Once the plaintiff has established a prima facie case, the burden shifts to the defendant to establish a legitimate, non-discriminatory reason for the action. *Id.* If this burden is met, the burden again shifts to the plaintiff to establish that the defendant's reason is mere pretext. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000).

11

At the pleading stage, a plaintiff is not required to have "adequately alleged a prima facie case" or "circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Instead, a plaintiff need only "set forth plausible claims." *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012). And because *McDonnell Douglas* is an evidentiary rather than a pleading standard, a plaintiff need not satisfy the elements of the framework to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. at 510–11. However, assessing the elements of the *McDonnell Douglas* framework is helpful in determining whether a plaintiff has set forth plausible claims. *Khalik*, 671 F.3d at 1192.

In this case, Ali's Complaint does not contend that anyone made comments about his Iranian heritage. Ali thus fails to state a claim for direct discrimination under Title VI. *Chrysler Corp.*, 155 F.3d at 805. Further, the *McDonnell Douglas* framework makes clear that Ali has not set forth plausible claims under Title VI. Most notably, Ali fails to allege a causal connection between his protected status and the allegedly adverse actions. Instead, Ali merely notes his Iranian heritage to establish that he belongs to a protected class. [DE 32 at ¶ 32]. Ali also has not alleged that non-Iranian students were afforded more favorable treatment. Courts have routinely dismissed claims at the pleading stage for similar infirmities. *See, e.g.*, *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (holding that the plaintiff failed to allege that the defendants' adverse action was motivated by the plaintiff's constitutionally protected activity); *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 938 (11th Cir. 2011) (finding no plausible inference of racial discrimination where plaintiff "alleged only that she was black, she was pre-qualified for a loan, the terms of the loan changed through the application process, and she ultimately rejected the loan after her lawyer told her the terms were improper."); *Shahmaleki v. Kan. State Univ.*, 147 F. Supp. 3d 1239, 1244 (D. Kan. 2015)

(dismissing the plaintiff's Title VI claims because the complaint contained only conclusions; failed to allege "that the non-Iranian students who were afforded appeals were similarly situated to him, or provide any details as to who these students were"; and did not provide facts about the specific policies and procedures that were generally available but were not offered to him); *Kim v. Grand Valley State Univ.*, No. 1:11-CV-233, 2012 WL 1032704, at *3 (W.D. Mich. Mar. 27, 2012), *aff'd* (6th Cir. 12-401) (Feb. 11, 2013) (holding that dismissal was appropriate because the plaintiff's "Title VI claim relie[d] entirely on conclusory allegations to establish discriminatory animus.").

Where, as here, "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 566 U.S. at 677 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). For these reasons, Ali fails to state a claim for relief under Title VI, and that claim is dismissed.

**D. Age Discrimination Act of 1975**

Next, Ali brings a claim against the University for discrimination under the Age Discrimination Act of 1975 ("ADA") because Ali was 41 years of age at the time of his suspension. [DE 32 at ¶ 33]. Congress has abrogated the States' Eleventh Amendment immunity for purposes of the ADA. *See Lane*, 518 U.S. at 198.

The ADA requires a would-be plaintiff to exhaust his administrative remedies before filing suit. 42 U.S.C. § 6104(e)(2) ("No action . . . shall be brought . . . if administrative remedies have not been exhausted."). "[A]dministrative remedies shall be deemed exhausted upon the expiration of 180 days from the filing of an administrative complaint during which time the Federal department or agency makes no finding with regard to the complaint, or upon the day that

13

the Federal department or agency issues a finding in favor of the recipient of financial assistance, whichever occurs first." *Id.* at § 6104(f). "In order for the district court to have jurisdiction under the ADA, plaintiffs must exhaust their administrative remedies." *Simmons v. Middle Tenn. State Univ.*, 117 F.3d 1421 (6th Cir. 1997) (per curiam) (table); *see also Williams v. Trevecca Nazarene Coll.*, 162 F.3d 1162 (6th Cir. 1998) (table). And the plaintiff "must allege that he filed an age discrimination complaint with the appropriate agency and that either 180 days elapsed with no finding or the agency issued a finding against" the plaintiff. *Id.* Otherwise, the ADA claim is not properly before the district court, and that court must dismiss the claim for lack of jurisdiction. *Id.*

Ali's Complaint contains no allegation that Ali has exhausted his administrative remedies. Accordingly, the Court lacks jurisdiction over Ali's ADA claim, and that claim is dismissed.

### E. State-law Claims: Breach of Contract, Defamation, and IIED

#### 1. The University, Dr. Hern, and Dr. Calloway

Ali brings three claims against the University and its employees, Dr. Hern and Dr. Calloway, under Kentucky Law. First, Ali alleges that the University and its employees defamed Ali's character by making statements about him during Dr. Calloway's class. [DE 32 at ¶ 29–30]. Second, Ali alleges that the University, through Dr. Hern and Dr. Calloway, intentionally inflicted emotional distress on Ali. *Id.* at ¶ 37. Finally, Ali alleges that the University breached its contract with Ali when it failed to follow its policies and procedures set out in the Student Handbook and incorporated Code of Student Conduct. *Id.* at ¶ 28. The University responds to all three claims by arguing that it and its employees are immune from suit under Kentucky law. [DE 7-1 at 44–50].

Immunity "is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001); *see also Alden v. Me.*, 527 U.S. 706, 755 (1999).

14

The University is a state agency entitled to governmental immunity, which is an extension of the Commonwealth's sovereign immunity. *Graham*, 804 F.2d at 960; *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017). A waiver of sovereign immunity will be found "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Id.* at 346 (citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 169 (1909)). "Once it has been determined that an entity is entitled to sovereign immunity, [courts] ha[ve] no right to merely refuse to apply it or abrogate the legal doctrine." *Id.* at 344 (citations omitted).

Ali's defamation and IIED claims arise under tort law. The doctrine of sovereign immunity extends to tort claims. *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978) (citing *Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963); *All-Am. Movers, Inc. v. Kentucky ex rel. Hancock*, 552 S.W.2d 679 (Ky. Ct. App. 1977)). The Kentucky General Assembly has never expressly stated or otherwise suggested that it intended to waive sovereign immunity for tort claims against governmental institutions, including public universities. Faced with such claims, courts have found that no waiver exists. *See, e.g.*, *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-CV-844-DJH, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016) (dismissing a defamation claim under Kentucky law because sovereign immunity had not been waived); *Wardle v. Lexington-Fayette Urban Cty. Gov't*, No. 2005-CA-001296-MR, 2006 WL 2788951, at *4 (Ky. Ct. App. Sept. 29, 2006) (affirming summary judgment dismissing an IIED claim because sovereign immunity had not been waived). Accordingly, Ali's state-law tort claims against the University are barred by sovereign immunity and therefore dismissed.

Ali's IIED claims against Dr. Hern and Dr. Calloway and defamation claim against Dr. Calloway fail for similar reasons. Ali brings his claims against Dr. Hern and Dr. Calloway in their

official capacities at the University. [DE 32 at ¶¶ 3–4]. "'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions." *Yanero*, 65 S.W.3d at 521. When a governmental employee is sued in her official capacity, her actions are included under the umbrella of sovereign immunity and afforded the same immunity, if any, to which the agency itself would be entitled. *Id.*; *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). Because the University is entitled to immunity and Ali sues Dr. Hern and Dr. Calloway in their official capacities, Dr. Hern and Dr. Calloway are afforded the same immunity as the University. Accordingly, Ali's defamation and IIED claims against them are likewise dismissed.

Unlike tort claims, however, the General Assembly has waived immunity for contract claims under a narrow set of circumstances pursuant to the Model Procurement Code. Specifically, immunity is waived when there is a "lawfully authorized written contract" with the Commonwealth. KRS 45A.245. Ali does not assert that the Student Handbook and incorporated Code of Student Conduct are express contracts. Rather, he argues that they constitute an implied contract between students and the University. [DE 38 at 373].

In similar cases, courts have found that student handbooks do not constitute express written contracts for immunity purposes. In *Green v. Sandy*, the plaintiff attempted to bring a breach-of-contract claim against Eastern Kentucky University ("EKU") for violating its Student Athlete Handbook. No. 5:10-CV-367-JMH, 2011 WL 4688639, at *4 (E.D. Ky. Oct. 3, 2011). The court rejected the claim and noted that it was not "immediately persuaded that the handbook could ever be understood as a contract. It is a unilateral policy manual which states that EKU 'reserves the right to alter, amend or modify this handbook at any time without prior notice.'" *Id.* The court went on to compare the EKU Student Athlete Handbook to handbooks in the employment context,

16

which, to constitute a contract, must contain specific language showing the institution's intent to be bound by the handbook's provisions. *Id.* (citing *Brown v. City of Niota, Tenn.*, 214 F.3d 718, 721 (6th Cir. 2000)). *See also Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 307 (Ky. 2014), *as modified* (June 23, 2014) (rejecting two University of Kentucky ("UK") employees' allegation that UK breached a contract by rejecting the employees' applications for disability benefits because "even if the documents gave rise to an *implied* contract, the claims would not be allowed because the state's immunity was waived under KRS 45A.245 only for *written* contracts.").

In this case, as in *Green* and *Furtula*, the University's Student Handbook and incorporated Code of Student Conduct do not create an express written contract. Ali has not put forth any evidence demonstrating that the University intended to be bound by the documents' provisions, and thus the Student Handbook is better understood as a unilateral policy manual like EKU's Student Athlete Handbook and UK's Staff Handbook. Further, even if Ali were correct that the Student Handbook gives rise to an implied contract, the Supreme Court of Kentucky has made clear that the Commonwealth's immunity has been waived under KRS 45A.245 only for *written* contracts. *Furtula*, 438 S.W.3d at 307. For these reasons, Kentucky has not waived its sovereign immunity protections under the Kentucky Constitution, and Ali's breach-of-contract claim is dismissed.[3]

### 2. Weckman

Ali also brings defamation and IIED claims against Weckman pursuant to Kentucky Law. Ali alleges that Weckman made defamatory statements against Ali and intentionally caused Ali

---

[3] Even if KRS 45A.245 stripped the University of immunity in this case, KRS 45A.245 stipulates that "[a]ny such action shall be brought in the Franklin Circuit Court and shall be tried by the court sitting without a jury." Thus, any such claim would not be properly before the Court. *See Furtula*, 438 S.W.3d at 307; *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 679 (Ky. Ct. App. 1978)).

emotional distress when Weckman said that she "knew" Ali was a "pedophile" in Dr. Calloway's classes. [DE 32 at ¶¶ 26, 29–30].

As outlined above, all federal claims against the University, Dr. Hern, and Dr. Calloway will be dismissed. Ali does not bring any federal claims against Weckman, a fellow student at the School of Nursing. *Id.* at ¶ 5. Because all federal claims will be dismissed, this Court lacks federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and must determine whether to maintain supplemental jurisdiction over Ali's claims against Weckman or remand them back to state court.

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction"). But there are circumstances where a district court should retain supplemental jurisdiction even if all underlying federal claims have been dismissed. In determining whether to retain jurisdiction, a district court should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

In this case, the values of judicial economy, convenience, fairness, and comity all weigh in favor or remanding the remaining claims to state court. First, this litigation is still in its early stages, with discovery incomplete and this Court having not invested significant time in the litigation. Nor does the Court anticipate an "undue amount of wasted or duplicative effort that will result from having to re-file . . . in state court." *DePiero v. City of Macedonia*, 180 F.3d 770, 790 (6th Cir. 1999). Judicial economy would thus not be served by exercising supplemental

jurisdiction over the remaining state-law claims. *Gamel v. City of Cincinnati*, 625 F.3d 949, 953 (6th Cir. 2010). Second, the risk of inconvenience is negligible. All necessary parties will remain parties before the state court on remand. *Emlyn Coal Processing of Minn., LLC v. Xinergy Corp.*, No. 6:09-CV-128-HAI, 2011 WL 1988249, at *1 (E.D. Ky. May 19, 2011) (no inconvenience or unfairness in remanding when all necessary parties would remain parties in state court). Likewise, nothing in the parties' briefs or the record indicates that remand would cause inconvenience. Thus, this factor also weighs in favor or remand. Third, remand serves the interest of fairness. Ali would not be prejudiced if the Court remands the case to the forum that he chose, and the Court can discern no prejudice to Weckman. *Kinser v. Logan Cty. Sch. Dist.*, No. 1:13-CV-00186-GNS, 2015 WL 3549843, at *3 (W.D. Ky. June 4, 2015). Finally, the defamation and IIED claims arise under state law and are thus better decided by the state court. *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp. 2d 662, 671 (E.D. Ky. 2009). Comity to state courts is a substantial interest that carries a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

Accordingly, all four *Carnegie-Mellon* factors weigh in favor of remand, and the Court will remand Ali's claims against Weckman to Jefferson County Circuit Court.

## CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS AS FOLLOWS**:

(1) The University of Louisville's, Dr. Marcia Hern's, and Dr. Angela Calloway's First Motion to Dismiss [DE 7] is **DENIED AS MOOT**;

(2) Katherine Weckman's First Motion to Dismiss [DE 10] is **DENIED AS MOOT**;

(3) The University of Louisville's, Dr. Marcia Hern's, and Dr. Angela Calloway's Second

19

Motion to Dismiss [DE 34] is **GRANTED**. Ali's claims against the University of Louisville, Dr. Marcia Hern, and Dr. Angela Calloway are **DISMISSED WITH PREJUDICE**;

(4) Katherine Weckman's Second Motion to Dismiss [DE 36] is **DENIED AS MOOT**;

(5) Ali's Defamation and IIED claims against Weckman are **DISMISSED WITHOUT PREJUDICE**, and the case is **REMANDED** to Jefferson County Circuit Court; and

(6) The action is **STRICKEN** from the active docket of this Court.

Cc: Counsel of record